UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGEL L. HERNANDEZ AND DANIELLE KELLY,
on behalf of themselves and all other
similarly situated employees,

                  Plaintiffs,

         v.

ALPINE LOGISTICS, LLC,

                  Defendant.

_____

08-CV-6254T

**DECISION
and ORDER**

## INTRODUCTION

Plaintiffs Angel Hernandez and Danielle Kelly, former employees of defendant Alpine Logistics, LLC, ("Alpine"), bring this action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law claiming that they were improperly denied overtime benefits under state and federal law. Specifically, the plaintiffs, who were employed as delivery drivers for Alpine, and who seek to proceed on behalf of all drivers employed by Alpine, claim that because of an amendment to the FLSA effective on June 7, 2008, they became entitled to Federal overtime benefits to which they had previously been exempted. Plaintiffs also contend that the defendant failed to properly pay overtime wages in accordance with New York State law. Defendant denies the plaintiff's allegations, and claims that the June 7, 2008 amendment to the FLSA did not institute a new requirement that it pay overtime wages to its drivers.

The parties now move for summary judgment.  Plaintiffs seek an order declaring that as a matter of law, they are entitled to overtime wages under the FLSA as of June 7, 2008, and that they were entitled to overtime wages under New York State law prior to June 7, 2008.  Defendant also moves for summary judgment, seeking an order that as a matter of law, the plaintiffs are exempt from receiving overtime pay under the FLSA, and therefore not entitled to federal overtime benefits.  The defendant does not address the legal merits of plaintiffs' claims regarding entitlement to overtime benefits under New York State law, but alleges that questions of fact regarding hours worked precludes granting judgment as a matter of law on plaintiffs' state law claims.

For the reasons set forth below, I find that as of June 7, 2008, Alpine was required to pay overtime benefits under the FLSA of one-and-one-half times its drivers' regular rate of pay to any driver who qualified as a "covered employee" for the relevant pay period.  I further find that prior to June 7, 2008, defendant was required under the New York Labor Law to pay overtime wages equal to or greater than one-and-one-half times the minimum wage in effect in the State of New York.

<u>BACKGROUND</u>

Defendant Alpine Logistics, LLC, is a company that was created in 2007 to pick up and deliver packages in the eastern half of the Rochester, New York metropolitan area.  Alpine operated on behalf

of DHL, a courier service that, at the time, was expanding its operations to compete with other courier services such as UPS and Federal Express.[1]  Alpine began operations on August 27, 2007, and employed several drivers to operate its initial fleet of 25 vehicles.  Of these vehicles, 6 had a gross weight greater than 10,000 pounds, and 19 had a gross vehicle weight less than 10,000 pounds.  Shortly after Alpine began its operations, it acquired its permanent fleet of 26 vehicles, including 2 vehicles that had gross weights greater than 10,000 pounds, and 24 vehicles that had gross weights less than 10,000 pounds. Under the terms of their employment, any of the drivers could be required to drive any one of the vehicles regardless of its weight.

Because some of Alpine's vehicles had a gross weight greater than 10,000, its drivers were subject to regulations promulgated by the United States Department of Transportation, which regulates larger trucks, and <u>inter alia</u>, limits the amount of time that a driver may drive without taking a break, and mandates required rest periods when driving large trucks.  Pursuant to laws and regulations governing large trucks and their drivers, and specifically due to provisions of the Motor Carrier Act, ("MCA") drivers of large trucks are not entitled to overtime compensation.

---

[1] DHL proved unable to compete successfully in the United States with other courier services, and ceased the majority of its operations in the U.S.  Therefore, on February 28, 2009, Alpine ceased operations.  Plaintiffs' claims for overtime compensation relate only to the time Alpine was in business.

Moreover, even if drivers regularly drove vehicles weighing less than 10,000 pounds, the drivers remained exempt from overtime eligibility if they could be called on to drive a truck heavier than 10,000 pounds. Because the Alpine fleet contained two trucks that weighed more than 10,000 pounds, and because the drivers could be required to drive those trucks, not one of Alpine's drivers was entitled to overtime benefits.

In June, 2008, the United States Congress enacted the SAFETEA-LU Technical Corrections Act of 2008. ("the Act" or "Technical Corrections Act") P.L. 110-244, 122 Stat. 1572. According to the plaintiffs, Section 306 of the Act amended the FLSA, and changed the eligibility of drivers for overtime pay by providing that drivers who drove trucks weighing less than 10,000 pounds would now be eligible for overtime compensation. Defendant contends that the Act made no such change, and that drivers who could still be required to drive trucks in excess of 10,000 remained exempt from FLSA overtime provisions.

Prior to filing the instant action, plaintiffs sought overtime wages from Alpine, which Alpine refused to pay. As a result, plaintiffs brought the instant action.

<u>DISCUSSION</u>

I.   <u>The Parties' Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

In the instant case, the plaintiffs move for summary judgment seeking a declaration that as of June 7, 2008, because of an amendment to the FLSA, they became entitled to overtime compensation under the FLSA.  Plaintiffs further seek a declaration that under state law, prior to June 7, 2008, they were entitled to overtime compensation payable at a rate that was equal to or greater than one-and-a-half times the state's minimum wage.

The defendant also moves for summary judgment, seeking a declaration that the plaintiffs are not entitled to overtime compensation, on grounds that the Technical Corrections Act did not change, and did not intend to change, the overtime exemption that applies to drivers who could be required to drive vehicles weighing more than 10,000 pounds.

II.  Standard of Review for FLSA Claims.

To state a claim for a violation of the FLSA's requirement to pay overtime wages for overtime work, a plaintiff must demonstrate that he: (1) is an employee subject to the protections of the FLSA; (2) that he performed overtime work; (3) that he was not compensated with overtime pay for overtime work performed; and (4) there is sufficient evidence, documentary or otherwise) in support of his claim for the number of overtime hours claimed. See e.g., Mendez v. Radac Corp., 232 F.R.D. 78, 85 (W.D.N.Y. 2005)(Larimer, J.).  Where an employee who is not receiving overtime compensation contends that he is entitled to such compensation under the FLSA, it is incumbent upon the employer to establish by clear and convincing evidence that one of the FLSA's exemptions to the overtime requirements applies, and therefore the employee is not entitled to overtime pay.  Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190 (1966); Shockley v. City of Newport News, 997 F.2d 18, (4th Cir. 1993).  In doing so, the employer must establish that the employee "fit[s] plainly and unmistakably within [the exemption's]

terms." <u>McGrath v. City of Philadelphia</u>, 864 F.Supp. 466, 483-84 (E.D. Pa. 1994)(quoting <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (U.S. 1960).

    III.  <u>Plaintiffs have established that they are entitled to benefits under the FLSA following amendment to the FLSA in 2008.</u>

    A.  <u>Prior to June 7, 2008, plaintiffs were exempt from overtime benefits under the FLSA</u>.

The Fair Labor Standards Act provides in relevant part that subject to certain enumerated exemptions, those employees who work in excess of 40 hours in a workweek are entitled to compensation at a rate of one-and-one-half times their regular rate of pay. 29 U.S.C. § 207. One enumerated exemption contained in the FLSA is known as the "Motor Carrier Exemption." The Motor Carrier Exemption exempts from overtime compensation employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours." 29 U.S.C.A. § 213(b)(1). Pursuant to the Motor Carrier Act, the Secretary of Transportation has the power to regulate the qualifications and hours of employees of "motor carriers" and "private motor carriers" engaged in interstate commerce. 49 U.S.C.A. §§ 301, 31501, 31502(b). Accordingly, employees of motor carriers and private motor carriers historically have not been entitled to overtime compensation.

In 2005, however, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users

law, which amended the terms "motor carriers" and "private motor
carriers" to include only "commercial motor vehicles", which
included, among other types of vehicles not relevant here, motor
vehicles with a gross weight greater than 10,000 pounds. 49
U.S.C.A. § 31132(1)(A).  The change in definition of the terms
"motor carriers" and "private motor carriers," intentionally or
otherwise, restricted the Transportation Secretary's power to
regulate qualifications and hours of drivers employed by motor
carriers or private motor carriers to carriers operating vehicles
with a weight greater than 10,001 pounds.  Because the Secretary's
jurisdiction was now limited to regulating carriers operating
vehicles larger than 10,001 pounds ("larger vehicles"), drivers of
vehicles weighing less than 10,000 pounds ("smaller vehicles") were
no longer under the authority of the Department of Transportation,
and therefore, pursuant to § 213 of the FLSA, were no longer exempt
from overtime compensation. 29 U.S.C.A. § 213(b)(1).  Although
drivers of smaller vehicles were now entitled to overtime under the
FLSA, courts found that in cases where drivers drove in fleets that
contained both larger and smaller vehicles, and where the drivers
could be called on to drive both types of vehicles, and thus be
subject to the Transportation Secretary's regulations, the drivers
were not entitled to overtime under the FLSA.  <u>Mayan v. Rydbom
Exp., Inc.</u>,

2009 WL 3152136 *6 (E.D.Pa., September 30, 2009); Tidd v. Adecco USA, Inc., 2008 WL 4286512 *4 (D. Mass., September 17, 2008). In the instant case, the defendant's fleet of vehicles was comprised of 24 smaller trucks and 2 larger trucks. Because any of the drivers could be required to drive either of the larger trucks, the drivers fell under the jurisdiction of the Secretary of Transportation, and therefore, were not entitled to overtime compensation under the FLSA.

B. Beginning June 7, 2008, plaintiffs were entitled to overtime benefits under the FLSA

On June 7, 2008, the SAFETEA-LU Technical Corrections Act of 2008 became effective. The Act, in general, was intended to "amend the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users to make technical corrections, and for other purposes." P.L. 110-244, 122 Stat. 1572. The Act restored the definitions of the terms "motor carrier" and "private motor carrier" to their pre-2005 meanings, thereby reinstating the jurisdiction of the Secretary of Transportation over drivers of both large and small vehicles. P.L. 110-244 § 305(c).

Section 306 of the Act, however, expressly amended the FLSA by providing that overtime compensation would be available to "covered employee[s]" despite the provisions of the Motor Carrier Exemption. See P.L. 110-244 § 306(A)("Beginning on the date of enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29

U.S.C. 207) shall apply to a covered employee notwithstanding section 13(b)(1)of that Act (29 U.S.C. 213(b)(1)).” The Technical Corrections Act further defined a “covered employee” as an individual--

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
> (2) whose work, in whole or in part, is defined--
> (A) as that of a driver, driver's helper, loader, or mechanic; and
> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles--
> (I) designed or used to transport more than 8 passengers (including the driver) for compensation;
> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

P.L. 110-244 § 306(c). Accordingly, although the Technical Corrections Act explicitly reinstated the jurisdiction of the Transportation Secretary over drivers of both smaller and larger trucks, the Act also explicitly amended the FLSA to provide that drivers who met the definition of a covered employee would be

entitled to overtime compensation regardless of whether or not the Transportation had jurisdiction to regulate the hours and conditions of those drivers. See Miller v. Professional Transp., Inc., 2010 WL 3398935 (S.D. Ind., August 25, 2010)(net result of change to FLSA is that employees "that were once exempt from overtime prior to the passage of SAFETEA-LU, are now eligible for the benefits of overtime compensation by virtue of the fact that they are "covered employees.")

In the instant case, the plaintiffs have demonstrated that they are "covered employees" under the Technical Corrections Act, and thus are entitled to overtime compensation. The uncontroverted evidence reveals that although some of the plaintiffs occasionally drove larger trucks, the majority of driving hours were spent driving vehicles weighing less than 10,000 pounds. No drivers were involved in the transportation of passengers or hazardous materials, and therefore, the plaintiffs qualify as covered employees entitled to overtime compensation.

The defendant contends that despite the language found in Section 306 of the Technical Corrections Act, the plaintiffs are not covered employees because Section 305 of the Technical Corrections Act returned the plaintiffs to jurisdiction under the Department of Transportation, and the Motor Carrier Exemption therefore continued to govern the plaintiffs. This interpretation, however, is in direct conflict with the language of Section 306,

which provides that the FLSA will apply to covered employees "notwithstanding" the Motor Carrier Exemption. P.L. 110-244 § 306(A)(emphasis added). In other words, Congress determined that even if the Motor Carrier Exemption applied to certain drivers, those drivers would still nevertheless be entitled to overtime compensation if they qualified as "covered employees." In this case, the plaintiffs have established that they are covered employees for purposes of Section 306, and have thus established entitlement to overtime compensation, *notwithstanding* the fact that they may be subject to regulations promulgated by the Secretary of Transportation. See also, Mayan 2009 WL 3152136 (holding that following the enactment of the Technical Correction Act, employees who worked on both larger and smaller vehicles were entitled to overtime benefits).

This interpretation of Section 306 was adopted by the Department of Labor via guidance issued in November 2009, (some six months after Alpine discontinued its operations). In a Wage and Hour Division Fact Sheet issued by the Department of Labor, the Department stated that even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to Department of Transportation regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds (non-commercial vehicles). See U.S. D.O.L. Wage & Hour Division Fact Sheet #19, issued Nov. 2009. (Attached as

Exhibit H to Plaintiffs' Opposition to Defendant's motion for summary judgment).  The Department of Labor further clarified this position in November, 2010, when it issued Field Assistance Bulletin No. 2012-2, which explained that employee drivers were entitled to overtime compensation provided that they worked for at least part of the week on vehicles weighing less than 10,000 pounds.  Although the defendant clearly did not have the benefit of the Department of Labor's guidance, and claims that it was never informed that it was required to begin paying overtime  to drivers who worked on non-commercial vehicles after the adoption of the 2008 Technical Corrections Act, lack of awareness of the change in the law does not excuse Alpine's obligation to follow the law.

I note that it does not appear from the record that Alpine intentionally violated the FLSA by refusing to pay overtime to its drivers who drove non-commercial trucks.  Rather, it is clear that the from 2005 to 2008, the status of the Motor Carrier Exemption was unclear, and Alpine reasonably interpreted the overtime laws prior to the adoption of the Technical Corrections Act of 2008 in determining that drivers were not entitled to overtime compensation.  As the defendant notes several times in its papers, Department of Labor investigators in April 2008 affirmed the defendant's policy of not paying overtime wages to drivers under the Motor Carrier Exemption.  The Department's approval of defendant's policies in April, 2008, is inapposite, however, to the

defendant's practices after June 7, 2008, when the FLSA was amended.

Alpine next argues that because the amendments made to the FLSA in the 2008 Technical Corrections Act were ambiguous and contradictory, the court should look to the legislative histories and purposes of the Motor Carrier Exemption, the Motor Carrier Act, the Technical Corrections Act, and the FLSA to learn that Congress could not have intended to subject drivers to dual jurisdiction under both the Department of Labor and the Department of Transportation.  In support of this argument, Alpine refers to the provision of the Technical Corrections Act amending the FLSA as being "buried" in the Act.  <u>See</u> Defendant's Memorandum of Law in Support of its Motion for Summary Judgment at p. 13.  That provision, however is Section 306 of the Act, which directly follows Section 305--the provision reinstating the definition of a motor carrier—on which the defendant relies to support its position.  And just as Alpine is wrong to characterize either Section as "buried" (which, in any event, is irrelevant), Alpine is incorrect in arguing that the provisions are contradictory or ambiguous.  Section 305 of the Act simply restores the definition of a motor carrier or private motor carrier, and Section 306, clearly and unmistakably, provides that notwithstanding the existence of the Motor Carrier Exemption, employees who work on exclusively or in part on vehicles weighing less than 10,000 pounds

are entitled to overtime compensation.  See Garza v. Smith Intern., Inc., 2011 WL 835820 * 3 (S.D.Tex., March 7, 2011)("The TCA reconfirmed that the MCA exemption does not apply to drivers operating motor vehicles that weigh 10,000 pounds or less..")(citing Glanville v. Dupar, Inc., 2009 WL 3255292, *4 (S.D.Tex. Sept.25, 2009); Brooks v. Halsted Comm'ns Ltd., 620 F.Supp.2d 193, 197-98 (D.Mass.2009)); Lucas v. Bell Trans, 773 F.Supp.2d 930, 939 (D. Nev., 2011)("That § 306 abrogates the historical motor carrier exemption is clear.")  Because there is no contradiction or ambiguity in these Sections, the court need not attempt to interpret the provisions by resorting to legislative history.

The defendant suggests that should this court find that the plaintiffs are entitled to overtime compensation, it would conflict with the very purpose of the Motor Carrier Exemption, which according to Alpine, was enacted to prevent dual jurisdiction of both the Departments of Labor and Transportation over drivers. Alpine contends that such dual jurisdiction would be unworkable, and would subject employers to a virtually impossible regulatory scheme because they would be required to maintain separate records for the same drivers based on the size of the truck driven by the driver at any given moment.  In support of this contention, Alpine sites Dalton v. Sabo, 2010 WL 1325613

(D.Or., April 1, 2010) in which the court adopted the defendant Sabo's contention that:

> Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

Dalton v. Sabo, 2010 WL 1325613 *4.[2]  I find, however, that such policy considerations can not overcome the clear and express language of the Technical Corrections Act which unambiguously provides that covered employees are entitled to overtime compensation notwithstanding the fact that such employees may also be subject to regulation by the Department of Transportation.  I therefore grant plaintiff's motion for a declaration that covered employees are entitled to overtime compensation under the FLSA.

IV.   State Overtime Claims

The plaintiffs allege that they are entitled to overtime compensation in accordance with New York State law for the period from August 27, 2007 to June 6, 2008.  According to the plaintiffs, even if they were exempt from overtime under the FLSA during that

---

[2] Although unattributed by the Dalton court, the above quote is found in the case of Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 901 (7th Cir.2009). The issue before the court in Collins was whether or not certain transportation that took place solely in the State of Illinois nevertheless constituted interstate commerce.

period, they were entitled under New York State Law to receive at least one-and-one-half times the state's minimum wage for any hours worked in excess of 40 hours in a week, an amount equal to $10.73 per hour.  Defendant does not contest plaintiffs' right to overtime under New York Law, but alleges that there are questions of fact as to the number of hours worked.

It is well settled that even if employees are exempt from overtime compensation under the Motor Carrier Exemption of the FLSA, under New York Law, they are still entitled to compensation equal to or greater than one-and-a-half times the minimum wage in the State of New York for overtime hours worked.  See 12 NYCRR 142-2.2.  Accordingly, I find that from August 27, 2007 to June 6, 2008, plaintiffs were eligible for overtime compensation under New York State Law of at least $10.73 per hour.  I therefore grant plaintiffs' motion for summary judgment with respect to their state law claims.

V.   Damages

In support of their motion for summary judgment, plaintiffs attach a list of the overtime hours purportedly worked for which they are entitled to overtime benefits.  Defendant opposes the evidence submitted by the plaintiff, and contends that it does not accurately reflect the hours worked by the employees, and does not reflect whether or not the employees qualified as "covered employees" during the weeks for which they seek overtime benefits.

Based on the record before the court, I can not hold as a matter of law that the records submitted by the plaintiff with respect to the overtime worked are accurate, nor can I find as a matter of law that each plaintiff seeking benefits qualified as a "covered employee" for the time period in which overtime benefits were sought.   However, because the legal issues have now been narrowed, and the parties are aware of their respective rights and obligations, I see no reason why the parties should not be able to stipulate as to damages.  Accordingly I direct the parties to meet and confer, and report within three weeks of the date of this order as to whether or not the matter of damages and attorneys' fees can be resolved.  If the parties are able to stipulate to the amount of damages and attorneys' fees, the court will issue a Judgment closing the case.  If the parties are able to stipulate to damages but not fees, the court will separately consider an application for fees on the papers.   Should the parties be unable to reach a negotiated agreement on damages or fees, I will advise the parties as to how this case will proceed at that time.

<u>CONCLUSION</u>

For the reasons set forth above, I find that as of June 7, 2008, plaintiffs were entitled to overtime compensation under the FLSA for all overtime hours worked during weeks in which they qualified as "covered employees" under the FLSA.  I further find that the plaintiffs are entitled to overtime under New York State

law for the period from August 27, 2007 to June 6, 2008.  The
parties are directed to meet and confer, and report to the court
within three weeks from the date of this order as to whether or not
they can stipulate to the damages to which the plaintiffs are
entitled.


    ALL OF THE ABOVE IS SO ORDERED.

                                      S/ Michael A. Telesca
                             _____
                                   MICHAEL A. TELESCA
                     United States District Judge

DATED:    Rochester, New York
           August 29, 2011